IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

JAMES K. BISHOP,

        Petitioner,       :     Case No. 2:24-cv-4063

  - vs -                                 District Judge James L. Graham
                                            Magistrate Judge Michael R. Merz

JAY FORSHEY, WARDEN,
 Noble Correctional Institution,

                                             :
        Respondent.

**REPORT AND RECOMMENDATIONS**

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 3), the State Court Record (ECF No. 15), the Warden's Return of Writ (ECF No. 16), and Petitioner's Amended Reply (ECF No. 21).

**Litigation History**

On November 8, 2017, a Jefferson County grand jury indicted Thompson on: one count of theft, a felony of the fourth degree in violation of Ohio Revised Code § 2913.02(A)(1), (B)(2); one count of receiving stolen property, a felony of the fifth degree in violation of Ohio Revised Code § 2913.51(A), (C); one count of burglary, a felony of the second degree in violation of Ohio Revised Code § 2911.12(A)(1), (D); and one count of safe cracking, a felony of the fourth degree in violation of Ohio Revised Code § 2911.31(A), (B)(Indictment, ECF No. 15, Ex. 1). A trial jury

convicted him on all counts except that it failed to find the stolen goods were of sufficient value to warrant a fourth degree felony and found him guilty of the lesser included fifth degree felony. *Id.* at Ex. 3.

With permission of the Seventh District Court of Appeals and new counsel, Bishop appealed, but the conviction was affirmed. *State v. Bishop*, 2019-Ohio-2720 (Ohio App. 7th Dist. June 28, 2019). The Ohio Supreme Court thereafter denied leave to file a delayed appeal the declined to exercise jurisdiction. *State v. Bishop,* 157 Ohio St.3d 1522, Ohio (2019).

On September 30, 2019, Bishop filed an Application to Reopen his appeal under Ohio R. App. P. 26(B)(State Court Record, ECF No. 15, Ex. 23). The Seventh District denied reopening, *State v. Bishop*, 2019-Ohio-4963 (7th Dist. Nov. 21, 2019), and the Ohio Supreme Court declined jurisdiction over a further appeal. *State v. Bishop*, 158 Ohio St. 3d 1458 (2020).

On February 24, 2020, Bishop filed a Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 15, Ex. 38). The trial court denied relief. *Id.* at Ex. 41-B. On August 5, 2020, Bishop sought to amend his Post-Conviction Petition. *Id.* at Ex. 44. The trial court denied that motion. *Id.* at Ex. 45. Bishop attempted to appeal, but the Seventh District dismissed the appeal for lack of a final appealable order. *Id.* at Exs. 46, 47.

Bishop has filed numerous additional matters in both the trial and appellate courts which are detailed in the Return of Writ (ECF No. 16, PageID 1856-69.) They are not discussed further in this Report except as they may bear on this Court's decision.

Bishop filed his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court on October 8, 2024 (docketed October 16, 2024). He pleads the following grounds for relief:

> **Ground One:** Ineffective assistance of trial and appeals counsel, for failure to consult with appellant before filing their briefs and before going to trial.

**Supporting Facts:** The fact that my trial counsel never once came to see me before trial to go over any of the discovery, nor explain the charges and what evidence they were basing their claims on, nor ask me if I had any alibi that could be used in my defense, my appeals counsel never once spoke to me to see if I could provide any assistance in my direct appeal which I did mention the ineffective assistance of trial counsel at sentencing.

**Ground Two**: prosecutor misconduct, for failure to comply with crim. R. 16(b)(5).

**Supporting Facts:** the prosecutor withheld exculpatory evidence, the Cross Creek policeman Jack Henderson's report stated he got my phone records just for the Jefferson county prosecutor. The state's main witness testified I confessed over a phone call, the phone records contain no call from or to him by me. The state withheld these records from the discovery. I received these phone records from Cross Creek Police Chief Casey Robinson in July 2022. (5 years after trial), that were not part of the state's discovery.

**Ground Three:** Witness misconduct, for the states main witness Tom Brown committing perjury several times at trial.

**Supporting Facts:** the witness committed perjury several times while testifying, (Tom Brown) the state's main witness testified I confessed during a phone call that was never made and proven once I recovered my phone records over 5 years later. That was withheld from my discover [sic].

**Ground Four**: Prosecutions misconduct, for failing to keep a chain of custody with evidence.

**Supporting Facts**: the Cross Creek Policeman Jack Henderson did not keep any chain of custody with the evidence that resulted in several items in states exhibit #6 being tainted, (1). The photo presented was admitted that it was from Eastliverpool cash land pawn shop of defendant at the counter pawning the victims wedding ring, when in fact it was a photo from a different pawn shop verified by Policeman Henderson at trail during his testimony, by the states exhibit # 5 a Leads online report it was confirmed to be from another pawn shop,(and never removed from states exhibit #6 once confirm by police it was wrong) (2) the defendants STATE I.D. used in exhibit #6 was also false it was not the copy of the I.D. that was sent to Leads online the day the item was pawned at Eastliverpool cash land. But from again another pawn shop in Toledo Ohio, that was determined at trial had nothing to do with the case at hand. (3) The

> Policeman Henderson returned victims wedding ring before defense counsel had a chance to examine it with expert witness of the one who made the victims wedding ring (chip warren). [sic].

(Petition, ECF No. 1, PageID: 18-22).

# Analysis

**Statute of Limitations**

Respondent asserts review of the merits in this case is barred by Bishop's failure to file within the statute of limitations.

Prior to 1996, there was no statute of limitations for habeas corpus cases. Then, on April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") adopting a one-year statute of limitations for habeas petitions. That statute is codified at 28 U.S.C. § 2244(d) and provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The State Court Record shows the Seventh District Court of Appeals decided Bishop's direct appeal on June 28, 2019. *State v. Bishop*, 2019-Ohio-2720 (Ohio App. 7th Dist. June 28, 2019). Under Ohio Supreme Court Rules, Bishop's appeal to that court was due to be filed not later than forty-five days after the appellate court's judgment. Bishop did not timely appeal, so the statute of limitations began to run on the forty-fifth day after the appellate judgment, which was August 12, 2019.

Under 28 U.S.C. § 2244(d)(2), the running of the statute of limitations is tolled during the pendency of any properly filed collateral attack on the judgment. The State Court Record shows Bishop filed his App. R. 26(B) Application for Reopening on September 30, 2019 (State Court Record, ECF No. 15, Ex. 23). The Seventh District implicitly found the 26(B) Application was properly filed as it proceeded to decide at least one of Bishop's Assignments of Error on the merits. Thus the statute of limitations ran for forty-nine days until it was tolled by the 26(B) filing. That tolling continued until March 17, 2020, when the Ohio Supreme Court declined to exercise jurisdiction (State Court Record, ECF No. 15, Ex. 27). This left 316 days to run; the statute expired January 27, 2021, unless again tolled.

While the 26(B) Application was pending, Bishop filed his Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 on February 24, 2020 (State Court Record, ECF No. 15, Ex. 38). That Petition was denied two days later on February 26, 2020, and Bishop did not

5

appeal. He later attempted to amend the Post-Conviction Petition and attempted to appeal from denial, but the appeal was dismissed for lack of a final appealable order (Entry, State Court Record, ECF No. 15, Ex. 47). Thus the pendency of the post-conviction petition provides no additional tolling.

On September 8, 2020, Bishop filed in the Seventh District a motion for relief from its final judgment (State Court Record, ECF No. 15, Ex. 52). That motion was overruled for lack of jurisdiction and thus provides no additional tolling. *Id.* at Ex. 54.

Because Petitioner did not properly file any additional collateral attacks on his conviction before January 27, 2021, the statute expired on that date and merits review is barred by § 2244(d) unless Petitioner has some other excuse for his late filing.

Bishop provides as a general excuse that COVID happened. While it is true that the COVID-19 pandemic affected all Americans and made it especially hard for the imprisoned, the pandemic will not excuse delay from January 27, 2021, to October 9, 2024.

In the alternative, Bishop claims that he is actually innocent. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), in which the Supreme Court held:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence"

6

> purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit anticipated *McQuiggin* by holding Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception." The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

In support of his actual innocence claim, Bishop argues:

> (A). Mr. Bishop has demonstrated his actual innocence in his motion for a new trial under crim. R. 33. (respondents exhibit 128, page ID. #924). In petitioners' affidavit of facts and law in support attached

7

to his R. 33 motion as exhibit (A), (page ID. #930), and furthermore, in petitioners' R. 33 motion exhibit (B), (page ID. #941), petitioner asserts that the new evidence he has gathered, that his trial lawyer did not. This new evidence is de-hors the record, and proves his innocence without a doubt.

(B). Furthermore, in petitioners' R. 33 motion exhibit (B) part 1; (page ID. #991), Bishop demonstrates the materiality of the evidence, also proving his innocence. Which is furthered in exhibit (B) part 2; (page ID. #1004). By using the evidence that is De-hors the record due to ineffective assistance of trial counsel, Mr. Bishop trial would have had a different outcome and Bishop asserts he was prejudiced.

(C). Furthermore, in Petitioners' R. 33 motion exhibit (C), (page ID. #1019), Bishops asserts the ground for prosecution misconduct, which is set forth in ground one, (page ID. #1021), ground two, (page ID. #1024), ground three, (page ID. #1027), In Petitioners' R. 33 motion exhibit (D), (page ID. #1031), Bishops asserts the ground for witness misconduct, which is set forth in ground one, (page ID. #1032), ground two, (page ID. #1034), this is an equitable showing of actual innocence, and that Bishop was prejudiced by the prosecution.

(D). Mr. Bishop has demonstrated his actual innocence in his post-conviction petition under 2953. 21 (Respondents exhibit 142, page ID. #1134), which is demonstrated in grounds 1-7 under prosecutor misconduct, (page ID. #1138-1153), this prosecutor misconduct, prejudiced Bishop of having a fair trial, and is further demonstrated in grounds 1 & 2, under witness misconduct, (page ID. #1154-1158). This witness misconduct also prejudiced Bishop of having a fair trial.

(E). This is further demonstrated in Petitioners' post-conviction petition under 2953.21 exhibit (A), (page ID. #1161, respondents exhibit #143), and also presented in Petitioners' postconviction petition under 2953.21 exhibit (B), (page ID. #1172, respondents exhibit 144), also presented in Petitioners' post-conviction petition under 2953.21 exhibit (B) part 1, (page ID. #1213, respondents exhibit 145), also presented in Petitioners' post-conviction petition under 2953.21 exhibit (B) part 2, (page ID. #1226, respondents exhibit 146).

(F). These grounds have absolutely proven that Bishop rights to due process were violated by the aforesaid, and that he has proven that with all this new evidence that is De-hors the record he is actually

>    innocent. And was prejudiced. (All of which the respondent failed
>    to address in their answer).

Amended Reply, (ECF No. 21, PageID 1940-41).

The Magistrate Judge has examined the newly-discovered evidence referenced in the Amended Reply. None of it constitutes evidence that satisfies the *Schlup* standard. That is, none of it is exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. All of it is new in the sense that it was not presented at trial (i.e. it is *dehors* the record). However, no new eyewitness accounts are presented nor is there any exculpatory scientific or critical physical evidence. For example, Bishop presents telephone records which may or may not undercut the trial testimony of his employer, Tom Brown. There are a number of affidavits from Bishop which are hearsay. There are official records from the Bureau of Motor Vehicles. Many of these items might have been admissible evidence if offered at trial or could be evidence that the State withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). However, they are not the kind of evidence needed to prove actual innocence so as to avoid the statute of limitations bar.

Because Bishop has not shown actual innocence by evidence sufficient to meet the *Schlup* standard, Respondent's statute of limitations defense is well taken and must be upheld.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.

March 20, 2025.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #