**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

JAMES K. BISHOP,

        Petitioner,      :      Case No. 2:24-cv-4063

  - vs -                            District Judge James L. Graham
                                     Magistrate Judge Michael R. Merz

JAY FORSHEY, WARDEN,
  Noble Correctional Institution,

                                  :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Objections (ECF No. 24) to the Magistrate Judge's Report and Recommendations recommending dismissal (the "Report," ECF No. 23). The Objections have been amended twice with Court permission (ECF Nos. 25, 27). District Judge Graham has recommitted the case for reconsideration in light of the Objections (ECF No. 30).

The Report recommends accepting Respondent's statute of limitations defense, concluding Bishop had not shown entitlement to equitable tolling or actual innocence to excuse his delay. The Report did not reach the merits of any of Petitioner's habeas claims because it concluded merits review was barred by the limitations defense.

1

**Actual Innocence**

Bishop's first objection is that he has indeed shown actual innocence under the standard set by *McQuiggin v. Perkins*, 569 U.S. 383 (2013).  In *McQuiggin* the Court stated the standard to be "[A habeas] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.  A district court is to consider the new evidence not in isolation, but along with all the evidence the jury heard.

The Sixth Circuit has drawn an important distinction between new evidence which actually exonerates a petitioner and new evidence which merely undermines the State's case:

> [A] petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself. This distinction between exonerating evidence and impeachment evidence undergirds both of the Supreme Court's landmark equitable-exception cases. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *House*, 547 U.S. at 552–53, 126 S.Ct. 2064.

*Hubbard v. Rewerts,* 98 F.4th 736 (6th Cir. 2024).

On direct appeal, the Ohio Seventh District Court of Appeals made the following findings

2

of fact:

> ¶ 12. Appellant was employed by Tom Brown Construction, owned by Mr. Brown, in early November of 2016. (5/14/18 Trial Tr., p. 108.) The company was hired to complete a project inside the victim's garage. On the first day of construction, Brown purchased a tool that belonged to the victim's recently deceased husband for $100. Brown gave the victim five twenty-dollar bills as payment. While the victim and Brown were completing the transaction, Appellant surprised the victim by exiting the house from the kitchen, as she was unaware that he had been inside her home. (5/14/18 Trial Tr., p. 135.) At some point, Brown left the job, leaving Appellant and another employee at the house to complete the work.
>
> ¶ 13 During construction, Appellant and the other employee asked the victim to use her restroom. She granted them permission. The men used the restroom and returned to the garage to continue their work. Sometime thereafter, the victim went into her garage to check on the progress of the work, but did not see Appellant. The other employee informed her that Appellant had gone back inside to use the restroom. There are only two doors into the victim's house: one in the kitchen leading to a patio and one in the front of the house leading to the front yard. As she was inquiring, Appellant suddenly exited the house through the kitchen door. The victim thought this was odd.  She knew he used the front door to enter the house, because she had just left her kitchen and did not see him enter through the kitchen. The victim said she was upset that Appellant had entered her house without her permission, but did not address this issue with him. Sometime thereafter, the victim again checked on the work and did not see Appellant. The other employee explained that he had, once again, gone to use the bathroom. Appellant returned to the garage shortly thereafter.
>
> ¶ 14 After Appellant and the other employee left for the day, the victim realized she could not find the money Brown had given her for the tool. When she entered her bedroom, she noticed that her jewelry box was open and its contents had been removed.  She went into her closet to check a lock box that contained her deceased husband's jewelry and found that the box had been pried open and its contents had been removed.  The victim called Brown and gave him this information.
>
> ¶ 15 At first, Brown could not make contact with Appellant, who did not go to work at the victim's house the next day. Eventually Appellant contacted Brown to ask for his paycheck. Brown accused Appellant of taking the items, and he denied these allegations.

3

> Brown persisted, informing Appellant that the stolen jewelry was worth more than $17,000. Appellant responded that the victim was exaggerating the value of the items. Brown construed this statement by Appellant as a confession.
>
> ¶ 16 Officer Jack Henderson of the Cross Creek Police Department was assigned to investigate. Initially, he, too, could not locate Appellant. After several days passed, Officer Henderson contacted Appellant by phone and learned that he was in Michigan working as a boilermaker. On investigation, Officer Henderson discovered that Appellant had pawned several items in East Liverpool and Toledo that matched the description of the victim's missing items. Appellant appears in the pawn shops' videos and a copy of his driver's license was attached to their receipts.

(Judgment Entry, *State v. Bishop,* Case No. 18 JE 0005 (Ohio App. 7th Dist. Jun. 28, 2019), Copy at State Court Record, ECF No. 15, Ex. 16, PageID 183-85)).

In support of his actual innocence claim, Bishop cites the following evidence not presented at trial:

> (#1) his **phone records** that he received from the Cross Creek Police Chief Casey Robertson in July 2022, (due to they were suppressed by the Prosecution)
>
> (#2) Bishop has gotten his **pay stubs** from his employer several years after his conviction, (due to his ineffectiveness of trial counsel)
>
> (#3) Bishop also **sued Brown**, that proves he in-fact lied during his testimony, (Bishop did not mention that in here due to the fact he doesn't need it to prove his innocence), (that it only proves that the state witness Brown committed perjury a third time).

(Objections, ECF No. 24, PageID 1961, emphasis supplied). Each of these will be discussed in turn.

**Phone Records**

The trial of this case began January 8, 2018, about fourteen months after the victim's jewelry went missing during the time Bishop was working at her home in November 2016. At

4

trial both Bishop's employer, Tom Brown, and the investigating police officer, Jack Henderson, testified they had difficulty locating Petitioner; Henderson testified he eventually found him working as a boilermaker in Michigan.

The State relied in part on a telephone call Bishop allegedly made to Brown asking where his paycheck was. Brown testified that during that telephone call, he accused Bishop of the theft and told him the victim valued the stolen jewelry at over $17,000. Bishop allegedly said this was an inflated value, which Brown took as a confession that Brown had taken the items.

Bishop claims no such call was ever made and offers to prove that by providing telephone records for the relevant dates, November 3-4, 2016. On February 24, 2020, he filed a Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 15, Ex. 38). Petitioner claims (Objections, ECF No. 24, PageID 1962) that the phone records on which he relies are attached to that Petition, but they are not. There are references to "phone records" in attachments, but no actual phone records.

At the same place (PageID 1962), Bishop claims the relevant records are attached to his Motion for New Trial which was filed July 18, 2022. That Motion is in the State Court Record at Ex. 118 and also has no phone records attached. Neither of Petitioner's amendments to his Objections has any appended phone records.

Bishop has not proved the existence of telephone records which would prove the call between him and Brown did not happen. But even if we assume for the sake of argument that the call did not happen and assume further that this completely discredited Brown's testimony, the remaining evidence would be sufficient to permit a reasonable juror to find Bishop guilty. The videos and copied driver's license showing Bishop pawned some of the missing items would still be of record and sufficient to allow a jury to conclude beyond a reasonable doubt that Bishop was

5

guilty.[1] And the jury would still have heard the uncontradicted evidence about Bishop's suspicious entries into the victim's house on the day the jewelry went missing and that he apparently absconded from the job by not showing up the next day.

Moreover, the telephone records are not the sort of evidence called for by *Schlup*. They are certainly not physical evidence of the sort which would prove actual innocence. An example of sufficient physical evidence comes from *House, supra*. There the petitioner was convicted of rape and murder because the victim's blood was found on his pants. It was later shown in the habeas proceeding that a vial of her blood was shipped for testing in the same box as the pants and broke in route.

The missing phone records would also not be reliable eyewitness testimony such as could come, if it existed, from a believable alibi witness who could place Bishop far away from the crime scene. Finally, there is nothing particularly scientific about phone records.

In sum, Bishop's phone records, even if they had been produced, would not have established his actual innocence.

As part of the discussion of phone records, Bishop claims that they were withheld from him at the time of trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). That issue does not require decision at this point because it goes to the merits of the case which the Court cannot reach because of the limitations bar. Bishop also objects (ECF No. 24, PageID 1965) to the Magistrate Judge's failure to discuss the misidentification of State's Exhibit 6 which he claims demonstrates ineffective assistance of trial counsel. Again, this is a merits issue which the Court cannot reach unless Bishop defeats the limitations bar.

---

[1] Bishop relies in his Objections on confusion about which pawn shop was involved. The difference is immaterial.

**Pay Stubs**

Bishop claims that his pay stubs prove he worked as a boilermaker at the "Detroit Edison power plant in Monroe Michigan for 10 hours on Nov. 04/2016." (Objections, ECF No. 24, PageID 1970). This proves "it was impossible for him to be on the other side of Ohio at the East-Liverpool cash-land at the same time pawning the victims wedding ring. SEE: Bishops' Criminal Rule 33 motion for a new trial newly discovered evidence and his post-conviction petitions' evidence, [all attached exhibits.]" *Id.*

As with the phone records, so to the pay stubs are not attached either to the Post-Conviction Relief Petition or the New Trial Motion (See State Court Record, ECF No. 15, Ex. 38, PageID 412-13; ECF No.15-1, Ex. 118, PageID 849-51). As with the phone records, a pay stub showing Bishop received pay for a certain day could potentially show he was not where he was claimed to have been, but that is evidence which undermines the evidence presented, not new evidence of innocence of the sort called for by *Schlup*.

Bishop spends a number of pages arguing he is actually innocent because various State's witnesses did not give direct testimony that they saw him steal the missing jewelry (Objections, ECF No. 24, PageID 1971-76). This is not new evidence, it is quoted from the trial transcripts.

**Bishop's Suit Against Tom Brown**

Next Bishop claims his suit against Tom Brown in municipal court proves Brown lied at his trial. Bishop provides no evidence at all in support of this claim.

Even if it were in fact properly presented, Bishop's new evidence does not persuade the

7

undersigned that no rational juror could have voted to find him guilty. Bishop's claim of actual innocence should be rejected.

**Equitable Tolling**

Bishop also objects to the Magistrate Judge's conclusion that he is not entitled to equitable tolling of the statute (Objections, ECF No. 24, PageID 1976-77).

The Report found Bishop was entitled to statutory tolling under 128 U.S.C. § 2244(d) by the pendency of properly filed collateral attacks as follows: The statute begins to run August 12, 2019, when Bishop failed to take a direct appeal to the Ohio Supreme Court. It ran for forty-nine days until it was tolled by Bishop's filing an App. R. 26(B) application for reopening on September 30, 2019. It was tolled from then until March 17, 2020, when the Ohio Supreme Court denied review of the appeals court's denial of the 26(B). On that date the statute began to run again. It was not thereafter tolled under 2244(d)(2) and expired 316 days later on January 27, 2021. Bishop did not file his Petition in this Court until October 8, 2024.

As a basis for equitable tolling of the more than three and one-half years, Bishop offered the COVID-19 pandemic. The Report rejected that claim as an excessive amount of time (ECF No. 23, PageID 1955). The Objections make no further argument on the COVID-19 excuse except to assert that his prison was on lockdown until September 2021 (Objections, ECF No. 24, PageID 1977). Even if that were a completely valid excuse, it would have expired in September 2021, three years before Bishop filed.

He also attributes his delay to his claim that he was required to exhaust his available state court remedies before filing. *Id.* at PageID 1976. The AEDPA accommodates state collateral

8

remedies by providing **statutory** tolling while they are pending. Bit Bishop cites no authority for the notion that **equitabl**e tolling will apply while a petitioner is preparing to file a collateral attack. To accommodate both the exhaustion doctrine and the statute of limitations, the Supreme Court provided that a filed habeas case could be stayed pending exhaustion. *Rhines v. Weber,* 544 U.S. 269 (2005). If Bishop had timely filed his Petition, he could easily have obtained a stay under *Rhines*.

The Sixth Circuit has instructed that equitable tolling should be granted sparingly. *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 561 (6th Cir. 2000). Bishop has not offered a persuasive case for equitable tolling of more than three times the statutory length of the statute of limitations.

**Objection No. 5**

By his first amended objection, Bishop objects to the Report's recommendation that Bishop be denied a certificate of appealability (ECF No. 25). He claims that he has shown beyond any doubt that he received ineffective assistance of trial counsel and ineffective assistance of appellate counsel and that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963).

At this point, however, there is no appealable issue as to those claims because the Court has not reached the merits of the case. Instead, the Magistrate Judge has recommended that merits review is precluded by the statute of limitations. Petitioner has not shown any reasonable jurist would disagree with that conclusion. The Court has not and should not rule on the merits of

Petitioner's *Brady* and ineffective assistance of counsel claims.

**Objection No. 6**

By his second amended objection, Bishop adds a claim his time to file has not expired because his petition for post-conviction relief under Ohio Revised Code § 29453.21 remains pending (ECF No. 27, PageID 1986).

Using a form prepared by someone else and filling in the blanks, Bishop filed a "Petition to Vacate or Set Aside Judgment of Conviction or Sentence" on February 24, 2020  (State Court Record, ECF No. 15, Ex. 38).  The caption includes the words EVIDENTIARY HEARING REQUESTED."  Two days later Judge Bruzzese entered an order captioned Order Overruling Request for Evidentiary Hearing (State Court Record, ECF No. 15, Ex. 41).  The entire text of the order reads "Defendant's Motion requesting an Evidentiary Hearing filed on February 24, 2020, is overruled without hearing." *Id.* at PageID 423.  The Magistrate Judge reads this Order as a denial of the entire petition for post-conviction relief because there was no separate motion for evidentiary hearing filed February 24, 2020.  When the State asked for clarification of the February 26, 2020, order, Judge Bruzzese confirmed this understanding (Order, State Court Record, ECF No. 15, Ex. 41-B).  The statute of limitations is not tolled by the supposed continued pendency of the petition for post-conviction relief.

**Conclusion**

Having considered Petitioner's Objections, the Magistrate Judge again recommends that

10

the Petition be dismissed as barred by the statute of limitations. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 19, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #